# EXHIBIT A

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Norfolk Division

| | | |
|---|---|---|
| AARON R. ROUSE, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 2:26-cv-00236 |
| | ) | |
| v. | ) | FIRST AMENDED |
| COMPLAINT | ) | |
| | ) | |
| THE NFL PLAYER DISABILITY AND | ) | |
| SURVIVOR BENEFIT PLAN, | ) | |
| | ) | |
| Defendant. | ) | |

Now comes the Plaintiff, AARON R. ROUSE, by his attorneys, and complaining against the Defendant, THE NFL PLAYER DISABILITY AND SURVIVOR BENEFIT PLAN, he states:

### Jurisdiction and Venue

1. Jurisdiction of this Court is based upon the Employee Retirement Income Security Act of 1974 ("ERISA"); and in particular, 29 U.S.C. §§ 1132(e)(1) and 1132(f). Those provisions give the district court jurisdiction to hear civil actions brought to recover benefits due under the terms of employee welfare benefit plans, which, in this case, consists of Total and Permanent Disability benefits under The NFL Player Disability and Survivor Benefit Plan.

1

2. This action may additionally be brought before this Court pursuant to 28 U.S.C. § 1331, which gives the district court jurisdiction over actions that arise under the laws of the United States.

3. The ERISA statute provides, at 29 U.S.C. § 1133, a mechanism for administrative or internal appeal of benefit denials consistent with the language of the governing Plan documents. Those avenues of appeal have been exhausted.

4. Venue is proper in the Eastern District of Virginia pursuant to ERISA § 502(e)(2) (29 U.S.C. § 1132(e)(2)) because Plaintiff resides within this District.

5. Venue is also proper in this District pursuant to 28 U.S.C. § 1391, because a substantial part of the events or omissions giving rise to Plaintiff's claim occurred within this District.

## The Parties

6. The Plaintiff, Aaron R. Rouse ("Rouse" or "Plaintiff"), is a legal resident of Virginia and resides in Virginia Beach, Virginia.

7. The Defendant, The NFL Player Disability and Survivor Benefit Plan ("the Plan") was at all times relevant operating throughout the United States and within the Eastern District of Virginia, and it delivered coverage to Plaintiff in the Commonwealth of Virginia.

8. The Plan is the Defendant in this action.

## Nature of the Action

9. This is a claim seeking payment of benefits claimed to be due under the Plan.

2

10. This action is brought against the Plan pursuant to ERISA § 502(a)(1)(B) (29 U.S.C. § 1132(a)(1)(B)).

11. Plaintiff also seeks attorney's fees pursuant to ERISA § 502(g) (29 U.S.C. § 1132(g)).

## The Plan and its Relevant Provisions

12. The Plan is a multi-employer welfare benefit plan as defined in ERISA § 3(37) (29 U.S.C. § 1002(37)).

13. The Plan is maintained under Collective Bargaining Agreements between the National Football League Players Association ("NFLPA" or "Union") and the NFL Management Council ("NFLMC").

14. The Plan provides disability and related benefits to eligible NFL players, including the Plaintiff.

15. The Plan designates the Disability Board, a "joint Board of Trustees," as its plan administrator and trustee. (Plan Art. 9, § 9.2.)

16. The Disability Board has six voting members, three of whom are selected by the NFLPA and three of whom are selected by the NFLMC. The Commissioner of the NFL is a nonvoting member and the chairman of the Disability Board. (Plan § 9.1.)

17. The Disability Board is the Plan's named fiduciary as defined in ERISA § 402(a)(2) (29 U.S.C. § 1102(a)(2)). (Plan § 9.2.)

18. An eligible Player (as defined in the Plan) who otherwise satisfies the eligibility terms of the Plan can receive disability benefits under one of three

3

categories: (1) Total and Permanent ("T&P") Disability benefits (Plan Art. 3, § 3.1); (2) Line of Duty Disability benefits ("LOD Benefits") (Plan Art. 5, § 5.1); or (3) Neurocognitive Disability benefits ("NC Benefits") (Plan Art. 6, § 6.1).

19. At the time a Player makes a claim for benefits to the Plan, the application is received by the NFL Player Benefits Office ("the Benefits Office").

20. The Benefits Office, located in Baltimore, Maryland, is responsible for handling the day-to-day administration of the Plan.

21. As part of its administrative and ministerial responsibilities, the Benefits Office assigns a coordinator to each application for Plan benefits at the time it is received.

22. The Disability Initial Claims Committee ("the DICC") is responsible for the initial determination of any and all disability benefits under the Plan, including reviewing a Player's medical records, interpreting the Plan, and making an initial determination regarding whether a Player qualifies for benefits. (Plan §§ 9.4, 9.5.)

23. When the DICC denies a claim for disability benefits, a Player has 180 days from the date he receives notice to appeal the initial decision to the Disability Board. (Plan § 13.14(a).)

24. All appeals of DICC decisions are made to the Disability Board.

25. In making its decision on review, the Plan requires the Disability Board to "take into account all available information, regardless of whether it was available or presented to the Disability Initial Claims Committee." (Plan § 13.14(a).)

4

26. In reviewing disability claims on appeal, "[t]he Disability Board will accord no deference to the determination of the Disability Initial Claims Committee." (Plan § 13.14(a).)

27. The Disability Board makes its decisions on Player appeals at its scheduled quarterly meetings and notifies Players of their decisions in subsequent written decisions. (Plan § 13.14(a).)

28. The Disability Board has "full and absolute discretion, authority, and power to interpret, control, implement, and manage the Plan and the Trust." (Plan § 9.2.) Further, "[b]enefits under this Plan will be paid only if the Disability Initial Claims Committee, or the Disability Board, or a designee of either, decides in its discretion that the applicant is entitled to them." (Plan § 9.9.)

29. Each benefit claim denied by the Disability Board provides a direct monetary benefit to each member club of the NFL, as the Plan's benefits are funded by the NFL member clubs. Three of the Disability Board's six voting members are appointed by the NFLMC, which represents those same clubs, creating an inherent structural conflict of interest.

## Factual Allegations

30. Rouse is a former professional football player who played in the National Football League.

31. During his NFL career, Rouse sustained multiple injuries, including orthopedic, neurologic, and cognitive impairments as a result of playing professional football.

5

32. Rouse continues to suffer from the lasting effects of his injuries, which render him substantially unable to engage in any occupation or employment for remuneration or profit, as that standard is defined under Plan Section 3.1(e).

*History of Rouse's Claim for Total and Permanent Disability Benefits*

33. On or about March 30, 2021, Rouse submitted a completed application for Plan Total and Permanent ("T&P") benefits, raising orthopedic, neurologic, and cognitive impairments as the basis for his disability.

34. Rouse's application was accompanied by over 80 pages of medical records documenting his severe and debilitating conditions resulting from his NFL career.

35. Rouse suffers from multiple severe impairments including, but not limited to: orthopedic impairments affecting his ability to engage in physical activities; neurologic impairments resulting from multiple concussions sustained during his NFL career; cognitive impairments affecting his mental functioning and capacity for employment; and psychiatric conditions that further limit his functional capacity.

36. On October 13, 2021, the DICC reviewed Rouse's application along with reports from Plan Neutral Physicians, including Dr. Orrin Sherman (orthopedist), Dr. Salman Azhar (neurologist), Dr. Charlene Bang (neuropsychologist), and Dr. Matt Norman (psychiatrist).

37. The DICC denied Rouse's application under Plan Section 3.1(d), which requires that "[a]t least one Plan Neutral Physician must find" that the Player is totally and permanently disabled. Section 3.1(d) further provides that "[i]f no Plan Neutral Physician renders such a conclusion, then this threshold requirement is not

satisfied, and the Player will not be eligible for and will not receive Plan T&P benefits, regardless of any other fact(s), statement(s), or determination(s), by any other person or entity, contained in the administrative record."

38. On November 23, 2021, Rouse's representative, Charlene Morring, timely appealed the DICC's initial denial to the Disability Board.

39. On appeal, Rouse was referred for additional evaluations with four new Plan Neutral Physicians pursuant to Plan Section 3.3(a): Dr. Preston Wolin (orthopedist), Dr. Sandeep Aggarwal (neurologist), Dr. Robert Heilbronner (neuropsychologist), and Dr. Mark Chapman (psychiatrist).

40. On October 4, 2022, the NFL Player Benefits Office provided Rouse and his representative with copies of the Neutral Physicians' reports and advised of the right to respond before the Disability Board issued a final decision.

41. On October 19, 2022, the undersigned Counsel submitted a neurological assessment report and records from Wagner Retina Center.

42. On October 28, 2022, the undersigned Counsel submitted additional medical records from Dr. Felix Kirven and Hampton Roads Neuropsychology.

43. Dr. Felix M. Kirven, Board Certified orthopedic surgeon, conducted an Independent Medical Examination of Rouse on April 19, 2022, and concluded with a reasonable degree of medical certainty that Rouse "will continue to have degenerative changes with respect to the multiple injuries that he has sustained through his years of NFL play" and that "with today's new standards, Mr. Rouse would be considered totally impaired due to his multiple concussions." Dr. Kirven agreed with impairment

7

ratings of 47% for the right lower extremity and 39% for the left lower extremity based on the AMA Guides to the Evaluation of Permanent Impairment 6th Edition.

44. Dr. Scott W. Sautter, Board Certified Neuropsychologist at Hampton Roads Neuropsychology, conducted a comprehensive neuropsychological assessment of Rouse on April 20, 2022. Dr. Sautter's diagnostic impressions were: (1) Mild Cognitive Impairment secondary to Depression, Pain and Sleep Dysfunction; and (2) History of concussions and musculoskeletal injuries incurred playing football. Dr. Sautter noted that "individuals with repeated concussions commonly experience depression" and that ongoing pain complaints and sleep disturbance "would be expected to aggravate the physical manifestations of depression." Test results were reported as valid, with Rouse passing the TOMM and "almost all" embedded validity measures.

45. Dr. Alan L. Wagner, Board Certified ophthalmologist at Wagner Macula and Retina Center, examined Rouse on September 9, 2022 and September 19, 2022. Dr. Wagner documented that Rouse presented with complaints of light sensitivity, dizziness, and flashes. In his impression, Dr. Wagner specifically noted Rouse's "History of repeated episodes of head traumas/concussions related to professional football" in connection with his migraine diagnosis. Dr. Wagner also documented Rouse as a Glaucoma Suspect with high risk in both eyes and initiated treatment with Latanoprost.

46. The medical evidence from treating physicians, including Dr. Felix Kirven, Dr. Scott Sautter, and Dr. Alan Wagner, supported Rouse's claim that he is totally

8

and permanently disabled due to the cumulative effects of multiple concussions and other injuries sustained during his NFL career.

*The Plan's Final Administrative Decision*

47. On November 22, 2022, the Disability Board considered Rouse's appeal from the earlier denial and unanimously decided to deny the appeal.

48. The Disability Board acknowledged potentially conflicting evidence in Rouse's file but elected not to give weight to the findings of his treating physicians. Under Plan Section 13.14(a), the Plan's written denial was required to "discuss the decision, including an explanation of the basis for disagreeing with or not following" the medical reports presented by Rouse from his treating physicians.

49. The Disability Board noted that while Dr. Felix Kirven opined that Rouse is totally impaired due to multiple concussions, the Board did not credit this opinion, nor did it adequately explain its basis for rejecting Dr. Kirven's conclusions.

50. By letter dated November 22, 2022, the Plan Director notified Rouse of the Disability Board's final decision denying his appeal.

51. The Plan's denial of Rouse's T&P Benefit claim was and continues to be against the manifest weight of the medical evidence and contrary to the opinions of Rouse's treating physicians.

52. Rouse has exhausted all avenues of administrative appeal available under the Plan, and this matter is ripe for adjudication.

## COUNT

### ERISA § 502(a)(1)(B) CLAIM FOR BENEFITS AGAINST THE PLAN

1–52. Rouse repeats and re-alleges each and every allegation set forth in Paragraphs 1–52 as if fully set forth herein.

53. This count is brought pursuant to ERISA § 502(a)(1)(B) (29 U.S.C. § 1132(a)(1)(B)) against Defendant NFL Player Disability and Survivor Benefit Plan for payment of plan benefits.

54. ERISA § 502(a)(1)(B) (29 U.S.C. § 1132(a)(1)(B)) entitles Rouse to recover benefits due under the Plan and to enforce and clarify his rights to the benefits at issue.

55. The medical evidence in the administrative record objectively establishes that Rouse satisfies all terms for receipt of T&P Benefits under Plan Section 3.1, including that the cumulative effect of his orthopedic, neurologic, cognitive, and psychiatric impairments renders him substantially unable to engage in any occupation or employment for remuneration or profit, and that such condition is permanent as it has persisted for well in excess of twelve months. (Plan § 3.1(e).)

56. The Plan's denial of Rouse's T&P Benefit claim was and continues to be against the manifest weight of the medical evidence and contrary to the opinions of Rouse's treating physicians.

57. The Disability Board failed to properly consider and weigh all medical evidence, including the opinions of treating physicians who have extensive familiarity

10

with Rouse's conditions, the cumulative effect of Rouse's multiple impairments, and the real-world impact of Rouse's disabilities on his ability to engage in gainful employment. In so doing, the Disability Board abused its discretion under Plan Section 9.9, which requires the Board to "consider all information in the Player's administrative record."

58. The Disability Board failed to provide a full and fair review as required by ERISA § 503 (29 U.S.C. § 1133) and the Department of Labor regulations at 29 C.F.R. § 2560.503-1, including but not limited to: ignoring substantial medical evidence from treating physicians without adequate explanation; failing to reconcile conflicting medical opinions in a principled manner; and failing to provide an adequate written explanation of the basis for disagreeing with the medical opinions of Rouse's treating physicians as required by Plan Section 13.14(a) and 29 C.F.R. § 2560.503-1(h)(2)(iv).

59. The Disability Board's denial should be evaluated in light of the structural conflict of interest inherent in the Plan's administration. Three of the Disability Board's six voting members are selected by the NFLMC, which represents the NFL member clubs that fund the Plan. Each denial of benefits directly reduces the financial obligations borne by those clubs. This conflict is a factor that must weigh in the Court's review of the Board's decision. *See Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105 (2008).

60. Rouse is and remains entitled to T&P Benefits due, plus any interest that has accrued thereon; and he is also entitled to a declaration of rights that his T&P

11

benefits remain payable thereafter so long as he continues to meet the Plan's terms and conditions.

61. As a direct and proximate result of Defendant's wrongful denial of benefits, Rouse has been damaged by the loss of T&P disability benefits to which he is entitled under the Plan.

WHEREFORE, Plaintiff prays for the following relief:

A. That the Court enter judgment in Plaintiff's favor and against Defendant The NFL Player Disability and Survivor Benefit Plan;

B. That the Court order Defendant The NFL Player Disability and Survivor Benefit Plan to pay all accrued T&P benefits to Plaintiff in an amount equal to the contractual amount of benefits to which he is entitled under the Plan;

C. That the Court order Defendant to pay Plaintiff compounding prejudgment interest on all contractual benefits that have accrued prior to the date of judgment, pursuant to 29 U.S.C. § 1132(a)(1)(B);

D. That the Court order Defendant to continue paying Plaintiff plan benefits in an amount equal to the contractual amount of benefits to which he is entitled for so long as he continues to meet the Plan conditions for continuance of benefits;

E. In the alternative to the relief requested in paragraphs B through D, that the Court remand this matter to the Disability Board with instructions to provide Plaintiff with a full and fair review of his claim in compliance with ERISA §

503 (29 U.S.C. § 1133) and the applicable Department of Labor regulations at 29 C.F.R. § 2560.503-1;

F. That the Court award Plaintiff his attorney's fees and costs pursuant to 29 U.S.C. § 1132(g); and

G. Such other and further relief, contractual or equitable, as the Court deems just and proper.

Dated: May 14, 2026

Respectfully Submitted,

**AARON R. ROUSE**

By Counsel

/s/ Charlene A. Morring

---

Charlene A. Morring, Esquire (VSB #46693)

Ashlee Ferebee, Esquire (VSB #89871)

**MORRING LAW, PLLC**

125 Saint Paul's Blvd, Suite 301

Norfolk, Virginia 23510

Telephone: (757) 223-1107

*Attorneys for Plaintiff*

13

## CERTIFICATE OF SERVICE

I hereby certify that on this 15th day of May, 2026, a true and accurate copy of the foregoing First Amended Complaint was filed electronically using the Court's CM/ECF system, which will send notification of such filing to all counsel of record.

/s/ Charlene A. Morring
Charlene A. Morring, Esquire

14